Harper, Chancellor.
The case of Ewing v. Smith, 3 Eq. Rep. 147, which is very much the present in many of its circumstances, has settled, that a feme covert cannot dispose of, or in any manner* charge her separate estate — not even with the consent of her trustee. If issue or profits are to be paid to her separate use, she may do what she pleases with them when she receives them, but caunot dispose of them by anticipation. The Court, however, as has been decided in several eases, will charge her separate estate, if the debt has been contracted for its benefit. In a late case, that of Street v. Theus, which I decided at Sumter, I had occasioned to consider the doctrine of the liability of trust estates, for debts contracted for their benefit; and to refer to some of the rules which I supposed would govern the Court, in the application of that doctrine. In that case, I observed, “ that although it was perfectly well settled that a trust estate was liable for debts contracted for its benefit, it has not been settled that one trust estate is liable for the debts of another; or that the remainder-man is to pay the debts which were contracted for the exclusive benefit of the tenant for life.” The word ‘ estate’ has sometimes been used ambiguously. There may be various estates in the same property, and one of these is no more liable for the debts of another, than if they were estates of different property. True, where property is conveyed in trust, and particular estates are created, there may be debts chargeable on the whole estate — the particular estates as well as the remainder, and to which all shall contribute rateably. As where, at the creation of the trust, the estate is charged with a debt which falls due during the continuance of a particular estate ; or perhaps, during the continuance of a particular estate a debt may be created which shall properly be chargeable on the whole, being contracted for the benefit of the whole — such may be debts contracted for repairs and improvements. On the other hand, it cannot be doubted there may be debts of the particular estate, for which subsequent estates, or the remainder, will not be liable — such as the well known instance of interest accruing during the continuance of a life estate, which the tenant for life is bound to keep down. The accruing interest is continually due, and is a charge on the particular estate.
So in the case of a trust estate, all the charges of management* are the debts of the particular estate; taxes, current and necessary repairs, the support of slaves, if they form part of the estate; so all debts, chargeable on the estate, which were contracted for the individual benefit of the tenant for life In the case of a legal estate no one would think of the remainder being liable for the debts of the tenant for life. These must be paid, not out of the corpus of the property, but out of the profits ae- *160 cruing during the continuance of the estate of life. The particular estate is liable to be sold, not any part of the capital. The equity on which a creditor comes into this Court to render atrust estate liable to the payment of his debt, in this, that he has advanced his money, or given credit to effect the objects of the trust, and having accomplished the objects of the trust at his own expense, he has a right to be put in the place of the cestui que trust, or to be reimbursed out of the trust fund. If there were a trust to keep a hospital in repair, he who has made the repairs at his own expense, might have his equity to be reimbursed out of the trust fund. So, if the trusts were to pay rents and profits for the separate maintenance of a feme covert, he who had advanced his money for her separate maintenance, might have such an equity. But every estate must bear its own burthen, or instead of effecting the objects of the trust, they will be defeated. The case of Street v. Theus, to which I have alluded, was one in which the property was settled to the joint use of the husband and wife during coverture — on the death of the husband, to the wife for life, remainder on her death to the children of the marriage. The bill was filed after the death of the husband, to obtain payment out of the trusts estate, of an account for articles furnished, and advances made to the husband for the support of himself and family. Here the objects of the trust, were that during the continuance of the joint estate, the issues and profits should go to the joint issue. The advances were made by the creditor to the joint use, and I thought he could look only to the joint estate for satisfaction — that is to say, to the rents and profits which accrued during the coverture. The further objects were to secure the estate to the individual use*ofthe wife after the husband’s death, and to her children after her death.
If by making advances to the husband for the use of himself and family, the wife’s separate life estate or the capital of the property might be rendered liable, it is plain that it would be in the power of the husband and a creditor to defeat the ulterior objects of the trust altogether. It would be vain to say that the wife shall not anticipate the income of her separate property, if the husband may by exceeding his income thus anticipate it, even before it vests in possession. It is to be observed that in such cases of marriage settlement, the husband, the wife and the children, are purchasers of their several estates for valuable consideration.
I do not think the cases decided in this State inconsistent with the view I have taken. In Cater v. Eveleigh, 4 Eq. Rep., 19, a cotton saw gin was bought for the use of the wife’s separate estate — it is not stated whether she was tenant for life, or in fee. If only tenant for life, the saw gin may have been considered a permanent improvement, properly chargeable on the whole estate. — The order is general for payment out of the estate. I suppose if it were an estate for life, the effect of the order was to make it payable out of the profits of the life estate. In James v. Mayrant, 4 Eq. Rep. 591, the order was express, to pay out of the accruing profits during the continuance of the life estate. In Montgomery & Eveleigh, 1 M’C. Ch. 257, there was an estate for life, and the debt was contracted for the support of the slaves, constituting according to my view only a charge on the life estate. The order is general to pay out of the life estate. The point does not seem to have been brought before the Court, of a distinction between the liability of *161 the particular estate and the remainder. But I suppose the effect of the order was to make the debt payable out the rents and- profits of the life estate.
The bill in the present case is filed, as it is said, to obtain payment out of the trust estate, on the ground that the debt was contracted for its benefit. But it is to be observed in the first place, that here are two general trust estates, though both are created by the same settlement and vested in the same trustees, out of each of which various particular estates have been carved for different purposes, and subject *to distinct liabilities. It is true, that as I understand the report of the Commissioner, the whole of both estates has been sold (except one plantation) and the proceeds vested in a single fund. But the Court must dispose of the proceeds of each according to the trusts of the original settlement. There is first, the property which was Mrs. Johnston’s before her marriage, her share of her father’s estate. In this the settlement gives her a life estate, (to her separate use during coverture) with remainder to her children. Is this property or her life estate in it, which still subsists, liable to the complainant’s demand, or any, and which of them ? The complainants must claim on the ground that their debt was contracted for the purpose of effecting the objects of the trust. What were the objects of the trust ? That she should receive the issues and profits to her separate use during the coverture — to her own use for life after the determination of the coverture by the death of the husband, and that the property should go to her children at her death. Have the complainants advanced their money for these purposes. It is on this part of the case that I feel the principal and only difficulty. The complainants’ first demand is for the money raised on the note indorsed by them, which they charge was expended by Mr. Johnston for the convenience and in the support and education of his family. This is said to have been the expending of money for the benefit of the trust estate. To expend money for the benefit of a trust estate, would seem to mean, either adding value to the estate, or the defraying of charges to which the trust estate would be liable. But was the wife’s separate trust estate liable for the expenses of herself and family ? In general such an estate is not. A feme covert who has an estate to her own separate use, may do what she pleases with the income of it. Slie is not bound to support herself with it, still less her children. — She may suffer it to accumulate, and still demand a support from her husband. — A husband if he be of ability, is bound to support his wife and family, though they may have property of their own. But there may be cases where the husband is not of ability. He may be embarrassed, or without property, and the wife may be compelled to support herself out of her separate *estate. And she might be subjected to the greatest distress, if she could not obtain the means of support on the credit of her separate estate. The Court has ordered children to be maintained out of their own property, when the father was not able to support them. The idea seems to be, that if articles are furnished, or money advanced to the husband, and employed by him in the support of his family, and he afterwards turns out insolvent, it is sufficient evidence that he was not of ability to support them, and the creditors have an equity to charge their account on the wife’s or children’s estate. It seems fair, that they who have re* *162 ceived the benefit of the creditor’s advances, should satisfy him out of their own property. There seem to be several difficulties in the way of establishing such a doctrine. The husband, the wife and the children, have all received their share of the benefit from money laid out in family expenses, and if they have distinct property, it should seem that they ought to contribute in proportion to' the benefit received. But there would be great difficulty in apportioning the contribution among them. The wife and children are not bound to support the husband and father, though they may be obliged to support themselves. If all accounts raised by the husband for the support of his family, are to be charged on the separate property of the wife and children when he proves unable to pay, it would always be in his power to squander his own property and contrive to charge his family expenses on the estates of the wife and children, thus defeating the object for which the trust was created. The husband ought to support his family in a manner suited to his income. If the wife’s separate fortune will afford a more expensive way of living, and she is minded so to apply it, there is nothing to forbid her doing so. But he should not incur expenses in reference to what her fortune will afford. He will, however, be continually tempted to do so, if we allow accounts raised by him to be charged on the wife’s separate estate. But the principal difficulty in the way of the doctrine is, that there is not, so far as I can discover, any law or authority for it. There would be no difficulty in such a case in England. If the credit were given to the huskand h0 alone would be answerable, *though he might have applied the money to the support of his family. If the wife should afterwards think fit to charge the debt on her separate estate, she might do so. So the wife there may raise any amount, or contract any debt on the credit of her separate estate, and the estate will be liable for them.
How far have our Courts departed from the English doctrines ? Thus far, that the wife should not by her own act merely, charge her separate estate. The Court will look into the necessity and propriety of the charge. If she is under the necessity of supporting herself and family on the credit of the separate estate, she may do so, as in England. But the'Court, before making her estate liable, will look into the circumstances of the husband, .and be satisfied that the necessity existed, and that the goods furnished or money advanced, was proper in her circumstances. But still it must appear that the credit was given to the wife, and not to the husband.
The decisions of our Courts which take away from the wife the power of charging her estate by her own mere act, do not give the husband the power of charging it, even for things the most necessary and proper. The wife must be trusted, and on the faith of her own separate property. In case of a trust to pay rents and profits to the separate use of a feme covert, they must be paid to her own order, or into her own hand. So, with respect to such an account, I should say, the goods must be furnished, or the money paid, to her own order or into her own hand. The husband may perhaps be her agent in raising the account, (though I should doubt the propriety of his acting as such) but then it should distinctly appear that he acted in the character of agent. In short, the dealings should appear to have been bona fide with the wife, and not with the husband. I can perceive nothing in the case, but *163 that the credit was given to the husband, though it was attempted after-wards to obtain the additional security of the wife’s separate estate. The money, so far as appears, was not paid to him for the particular purpose of supporting his family, but for any purpose to which he might' think proper *to apply it. The proof is very imperfect of his having applied it to the support of his family — at most it applies to but a part of the money. The carriage and horses form the most considerable item. On this I may observe, that if the husband thought proper to buy a carriage and horses for the convenience of himself and family, I do not perceive on what principle the wife’s separate estate can be charged with them. If, by her direction, he bought them for her separate use, and they are now her individual property, perhaps she may be chargeable. If he purchased for himself, they remained hie property, and she is chargeable with them as administratrix. The parties may have this point referred if they think proper. I cannot think either the wife’s life estate in this property, or the children’s remainder, liable to satisfy the complainants for the amount paid by them on the indorsement.
The complainants’ next demand is on an account raised against Mr. Johnston, in his lifetime, principally for corn and other plantation supplies ; cash advanced for payment of taxes; cash on account, for renewal of note, &c. So far as the supplies were for the use of Mrs. Johnston’s separate estate, corn for the support of her separate slaves, or taxes paid for her separate property, I think her life estate, (not the children’s remainder) is liable to satisfy the account. The report does not distinguish what was furnished for the separate estate, and what for the husband’s. — This may be a subject of further reference.
The complainant’s next demand is for an account against Mrs. Johnston, since her husband’s death, to the amount of $2,139 12, on which is credited $1,191, for produce sold chiefiyin 1821. Mrs. Johnston admits this account in her answer, to the amount of $1,364 64, but states that this only exceeded the amount of the crop of 1819, sent by her to the complainants, by about $163; and that she afterwards sent them produce more than enough to pay the balance. The report is not very specific as to the amount of this account proved, or the payment on it. I suppose the question of its being paid depends on that of the complainants’ right to apply the proceeds of the crop of 1819 to the account *of A. S. Johnston. It is clear that they had no s.ueh right. If the crop was entirely the property of the estate of A. S. Johnston, they had no right to retain it as preferred creditors. The adminis-tratrix was entitled to it, that she might distribute it in a course of administration. — She may be liable for the amount, as administratrix, to the creditors of her husband, but as between her and the complainants, her factors, it was a mere personal transaction. As to the claim set up by Mrs. Johnston, to a portion of this crop, it is perhaps not necessary now to decide. — That question will arise when she is called to account for her administration. I am inclined to think, that if she and her trustee permitted her husband to use the services of the slaves on his own plantation, (I understand the crops were made on the Rosalind plantation) without any agreement as to apportioning the crop, that the crop was his, and that she cannot, at all events, be considered as any thing more than a creditor, for the hire of the slaves. — On this point, however, *164 I do not conclude any tiling. In the account against Mrs. Johnston, there are charges for money, said to be advanced specifically for the maintenance and education of the children, and so applied by her. If that account is paid, it is not perhaps necessary to notice this charge particularly. I may observe, however, that Mrs. Johnston is personally liable, and all her property is liable for any debt contracted by her, or money advanced to her, since her husband’s death. If money was advanced to her for the support and education of her children, and properly applied, and the creditor should be unable to obtain payment of her, there is an estate expressly charged with the maintenance and education of the children, from which the creditor may be reimbursed. I could not, however, it seems to me, make the order in this case, to which the children are not parties I think the creditor might apply by petition.
As to the property which was A. S Johnston’s before his marriage, he had a life estate in that which was subject to all his debts. His life estate has now passed way, and the remainder has vested in the children, subject a life annuity to their mother. They are *all purchasers for valuable consideration. From the view which I have taken, it will appear, that I do not think this remainder chargeable with the personal debts of A. S. Johnston, or those contracted by him for the support of his family, or those contracted for the benefit and support of his life estate — in short, for any of the complainants’ demands.
It is ordered and decreed, that the case be again referred to the Commissioner, to report on the matters specified in the foregoing opinion, as matters of reference. And that as to the residue of the complainants’ charges, the bill be dismissed.
Mr. Gray, (the Commissioner,) to whom the cause was referred, by his report in January, 1833, found that the bond and note were given as herein before mentioned; and the money expended by Mr. Johnston, as already mentioned, and disallowed the complainants’ claim to be reimbursed either for the amount paid on Mr. Johnston’s note, or the sums advanced by them to Mr. Johnston for the maintenance of the plantation and family. The report finds further the assets of Mrs. Johnston in the hands of the trustee, amounting to„$3,965 55.
At January Term, 1833, the cause came before his Honor, Chancellor Johnston, upon the report exceptions and equity reserved, who ruled, that the decree precluded every question, except as to the fact whether the carriage was bought for Mrs. Johnston, and the supplies furnished on her credit; and overruled the exceptions, without making any further decree.
The plaintiffs appeal, and move to reverse the same, on the following grounds:
1. That the evidence taken in the case places it beyond doubt, that Magwood & Patterson indorsed the note of A. S. Johnston, on the credit of him and Mrs. Johnston, jointly ; that the money was applied to their joint use, and that Mrs. Johnston was consenting to the application of the money, as well as to the loan. And therefore, that this case comes within the principal of a loan, obtained by a married woman, upon the credit of her separate estate, and applied by her to her own use. *165 *2. That the loan was necessary and proper, in the circumstances in which Mr. Johnston was placed ; that the plaintiffs are humane and meritorious creditors of the wife as well as of the husband, and are entitled to the benefit of Mrs. Johnston’s engagement to them, because that engagement was such as, in conscience and in equity, should be complied with.
Pettigru, for the appellants,
cited Jacques v. The Methodist Church, 1 John. Ch. Rep. 150; It John. Rep. 458; Ewing v. Smith, 3 Eq. Rep. 41t.
3. That as Mr. and Mrs. Johnston were equally interested in the loan, their joint liability was a fair and equal arrangement of which the plaintiffs'should have the benefit; but, at all events, if Mrs. Johnston’s estate be not liable for the whole, it should be liable for a proportionable part.
4. That the advances made by Magwood & Patterson, after February, 1818, should be borne by Mrs. Johnston’s estate in like manner, as having been made upon the same understanding, that they were for the joint benefit of the husband and wife, and that they were jointly liable.
All which positions, as the plaintiffs contend, are consistent with Chancellor Harper’s decree, and with the law of this Court. But if the Court be of opinion that the said decree is opposed to the relief which the plaintiffs seek, they appeal from so much of the said decree.
Earle, J.
The Chancellor in his Circuit decree has decided the general principles of this case, and had settled the most important questions which arose in the progress of it. In order to charge the separate estate of the wife, he had said, that the goods must be furnished, or the money paid, to her own order or into her own hands. “ And although the husband might perhaps act as her agent, that it should distinctly appear that he acted in the character of agent; and that the dealings should appear to have been bona fide with the wife, and not with the husband.”
Under this general principle, the Chancellor expressly decreed,* that neither the life estate of the wife, nor the remainder of the children, was liable to refund the amount which the complainants had paid on their indorsement, and directed it to be referred to the Commissioner to inquire whether the carriage and horses were bought by the direction of the wife for her separate use, and were retained by her as her individual property. The Commissioner reported that they were not so purchased, and that they were sold after Mr. Johnston’s death, as part of his estate. He reports expressly that the credit, in relation to the money raised on the note indorsed, was given to Mr. Johnston himself. In relation to the advances, made by complainants to Mr. Johnston of money and supplies, provisions, &c., for the plantation, it was further referred on this subject, to enquire and report, whether the supplies were for the use of Mrs. Johnston’s separate estate; the corn for the support of her separate slaves, or taxes paid for her separate property. The Commissioner reports, that no evidence has been furnished by which it was practicable to distinguish what was on account of the one estate, and what of the other.
Another question raised, related to the supplies furnished Mrs. John *166 ston by the complainants after the death of her husband, in September, 1819, on which account they claimed a large balance. This question depended on the right of the complainants to apply the proceeds of the crop of 1819, to the extinguishment of their demands against Mr. Johnston. From the report of the Commissioner, it appears that they retained the whole of that crop, amounting to $1,162 -90, which they had no right to do, according to the decree. The Commissioner therefore reports that sum against them in favor of the estate.
On exceptions to the report it was confirmed, and the Chancellor was of opinion that by the previous decree the whole bill was dismissed, except the subject specially referred and reported on.
This Court is now of the same opinion, and the order of confirmation now affirmed- The complainants have ^appealed from the original decree, and this Court concurs fully in the views wdiich the Chancellor has taken, in that decree ; and the same is hereby also affirmed, for the reasons which he has given.
Johnson and O’Neall, Js., concurred.